By the Court. Duer, J.
This cause has been heard upon the bill, answers and replications, and upon a motion to refer the cause to take proofs and such accounts as may be requisite.
The bill seeks a partition of certain lands, partly in this state and .partly in Florida, which Benjamin W. Rogers, in October, 1843, conveyed to William Curtis Noyes and Richard H. Ogden in trust, to satisfy out of the proceeds of a sale, certain debts amounting to more than $80,000, then owing by Rogers in equal portions to the complainant Selden, and to the defendant Vermilya. The. validity of this conveyance as an express trust “ to sell lands for the benefit of creditors,” was not questioned by any of the counsel upon the argument, and will therefore be assumed by us in the opinion that we shall proceed to deliver, but what is thus assumed, we are not to be understood as deciding.
Upon incidental questions, involving in a measure the merits of the controversy, that have arisen in the progress of the cause, ■opinions have been delivered by the late chancellor, by Mr. Justice Edmonds, by the supreme court, and by the court of appeals, but to none of these opinions, except that of the court of appeals, will it be necessary to advert.
The court of appeals in affirming the decree of the chancellor, dismissing the bill as to Benjamin W. Rogers, who was originally made a defendant, placed their decision upon the sole ground, that Rogers had no interest whatever in the subject of the controversy, and had therefore been improperly made a party to the suit. They held, in direct opposition to the opinion of the chancellor, although they affirmed his decree, that Rogers, by the conveyance and release executed by him in November, 1846,- to the trustees, Noyes and Ogden, had divested himself of all his right, title and interest in the trust property; and to this extent, therefore, the operation in law of the November deed must be considered as settled. But the court of appeals have not decided, nor with any propriety, could they have decided, whether the title with which Rogers parted, became vested in the trustees to whom the conveyance was directly made, or in the holders of the bonds and notes, the payment- of which-, the *577 original trust deed was meant to secure ; in other words, it has not been decided whether the title to the lands of which the partition is now sought, is vested in the trustees as joint tenants, or in the parties before us, excluding the trustees, as legal or equitable tenants in common.
Had we the right to construe the release of Rogers to the trustees, and the subsequent deed and release to the same trustees, executed by The Farmers Loan and Trust Company, without any reference to the terms of the agreement between the parties to this suit and B. W. Rogers of October 14th, 1846, we should perhaps assent to the conclusion, that in judgment of law these conveyances operated as an immediate and absolute transfer to the complainant and defendants, with the exception of the trustees, of all the title and interest of Rogers, to the lands which they respectively embraced; that is, we should give to these deeds the same construction, as if they had been made to the parties before us, directly and by name, and not to nominal trustees, for their use and benefit. Nor upon this supposition, could we have any difficulty in decreeing a partition, if not to the full extent that the bill requires, yet of the greater part of the lands to which it refers. It is true, that upon this supposition, the parties before us have only an equitable title to all the lands, except those in Livingston County, but that a partition may be decreed between equitable owners, even when those in whom the legal title is vested are not before the court, the case of Coxe v. Smith, (4 Johns. Ch. R. 276,) without referring to other authorities, has definitively settled.
We are, however, clear in the opinion, that in construing the subsequent releases to the trustees, we have no right to reject from our consideration the previous agreement of the parties. The releases were founded upon this agreement, and were necessary and were designed to carry it into full effect. They are all parts of an entire transaction. In judgment of law, they are one instrument, and it is by reading them as such, that the intention of the parties which we are bound to effectuate must be collected. Speaking in technical language, the agreement, which is under seal, may be regarded as a deed, leading and declaring *578 the uses of the subsequent conveyances, and by a necessary consequence, controlling their interpretation.
In our view, therefore, of the present controversy, it turns entirely upon the true interpretation of the agreement of Oct. 14th, 1846, and upon the effect of that interpretation upon the co stmction of the subsequent conveyances and releases, and the questions that arise and are necessary to be considered and determined, are ;
First.—Whether admitting, that the parties before us, with the exception of the trustees, are the legal or equitable owners of the lands in question, a power of sale is not vested in Noyes and Ogden, which as irrevocable, unless by the consent of ail the parties, is an effectual bar to a partition} and,
Second—Whether the effect of the agreement and of the subsequent releases, was to vacate and annul, or only to vary and modify the trusts, created by the deed of October 1843, leaving the title to the lands, and the power to sell them, still subsisting in the trustees.
We have no hesitation in saying that the October agreement either grants to Noyes and Ogden a power to sell the lands to which it relates, or recognises and confirms a similar power as then existing; and it is equally clear, nor has it been denied, that if the power thus granted or confirmed, is now valid and subsisting, we can have no authority to divide the lands to which it relates. If the power exists, we have no right, at least upon a bill framed like the present, to prevent or restrain its execution.
The bill distinctly admits that a power to sell is contained in the agreement, but alleges that it was inserted through fraud or mistake, and ought therefore to be expunged. These allegations in the bill cannot however be regarded. They are not only pointedly denied by the answers, but are clearly disproved, since the statements in the answers, as they are responsive to the bill, and have not been contradicted by proof, must be taken as true. ' The agreement must be construed as it stands, and we can only deduce the intentions of the parties from the language it employs.
The bill, as we read and understand it, does not deny the *579 power of the trustees to sell the lands, upon any other ground than that which has been stated, and it may therefore be doubted whether any other could with propriety have been taken by the counsel for the complainant upon the argument. But we shall not permit a technical objection, which the silence of the defendants counsel appears to have waived, to prevent us from con - sidering the cause upon its merits, and upon all the grounds that were s© fully and ably stated and discussed by the counsel.
It was insisted by the complainant’s counsel, that the power to sell, as expressed in the agreement, is not immediate and absolute, but that its exercise is made to depend upon a contingency that has not occurred, and from its nature cannot be expected to arise. The parties it was said, so far from contemplating an immediate sale, intended that no sale whatever should be made, unless an equitable division of the property was found to be impracticable. It was fully understood between them, (such was the argument,) that this equitable division should be made, and hence, the partition which the parties have failed to make5 this court may now decree, in entire conformity, if not to the words, yet to the intent and spirit of their agreement. We confess that our first impressions were favorable to this construction of the agreement, but upon further reflection, we became satisfied that these impressions were erroneous, and that our duty required us to reject the interpretation they would have led us to adopt. The positive terms of the agreement have forced us to reject it. These plainly require the consent of each party in interest as necessary, not to authorise, but to prevent a sale. The language is clear and unambiguous, that if any one of the parties shall not consent to a division of the property, the trustees shall proceed to a sale. The defendants have not consented to a division, and we have no right to inquire into the grounds upon which their necessary consent has been, and is now withheld. We cannot take from them the discretion which the agreement gives, nor control them in its exercise. As they insist upon a sale by the trustees, the only question, that we have a right to consider, is, whether the requisite power has been vested in the trustees and now exists.
It was" contended by the counsel for the defendants, that the *580 requisite power was originally vested in the trustees and now exists, as a power, in trust, and consequently that under the provisions of the revised statutes, it is irrevocable and imperative. The defence it is true was not rested exclusively upon this ground, but it was evidently that which was chiefly relied on; and to the examination of the questions which it involves, the efforts of the counsel upon both sides were mainly directed.
It is with reluctance that we dissent from the opinion affirming the validity of the power, as a power in trust, which Mr. Justice Edmonds has delivered, but after an attentive consideration of all the arguments that have been urged in support of that opinion, we have found ourselves unable to adopt it. It is indeed certain, that the effect of the October agreement was to vest a power of sale in'the trustees, Noyes and Ogden, but if that power may now be exercised, in opposition to the wishes of the complainant, if it is now to be considered as a power that he is not at liberty to revoke, it is upon other grounds than by qualifying it as a power in trust, that the decision must be placed. We lay no stress upon the objection that the power is not granted in the form that the statute requires, that is, by “ a suitable clause in the conveyance of some estate in the lands to which it relates.” (1 R. S. 735, § 106.) We have already stated that the October agreement is a constituent part of an entire transaction, that it must'be read in connection with the subsequent conveyances, so as to render the whole a single, though complex instrument containing various grants, covenants and releases. We construe the power precisely as we should have done, had the agreement by which it is granted, been incorporated in the November deed, from Rogers to the trustees, and that deed had been executed by all the parties to the agreement. Thus construed, the objection as to the form of the grant ceases to apply. Nor upon reflection, do we attach any importance to the suggestion that was thrown out by the court upon the argument, viz., that the provisions of the revised statutes in relation to uses and trusts and trust powers, refer exclusively to dispositions of the legal estate, and consequently have no application to the equitable interest, which is all that the parties before us can be said to possess, in the greater part of the lands that the power embraces. ' It is true that these *581 statutory provisions refer exclusively, in their primary intent, to dispositions of the legal estate," but the words, especially in the article upon powers, are broad enough to embrace equitable interests, and were they less comprehensive than they are, a court of equity, in judging of the validity of trusts and trust powers, relating solely to equitable interests, ought doubtless to. be governed by the analogy of the law, and must therefore follow the rules, mutatis mutandis, that the statute prescribes. It is a case to which the sound maxim that equity follows the law emphatically applies.
The next objection that we shall state to considering the power as a power in trust, is that which we are forced to regard as decisive and unanswerable. It is that the power as it now exists, is to be exercised for the sole benefit of the owners of the land by whom it is granted. Not only therefore is it not subject to the provisions of the revised statutes in relation to trust powers, looking to the intent of those provisions, and to the cases to which alone they were meant to apply, but by express words it is excepted from their operation. (1 R. S. 738, § 134.)
We shall enter into no labored argument to show that the power, as it is now alleged to exist, cannot be referred to its original creation by B. W. Rogers, in the trust deed of 1843, but that its true, and only source and origin, must be found in the agreement of the parties in October, 1846. When the whole title and interest of Rogers became vested in the parties before us as tenants in common, and it is upon the supposition that they are so vested that we are now considering the case, the estate of the trustees under the original trust ceased to exist, and with it their power to sell the lands, which had been granted, and existed only as an incident to their estate, also, and of necessity ceased. It fell with the title to which, by the terms of its creation, it was inseparably attached. Nor could it then have been revived or continued in force by any act of Rogers, without the consent of those who then became the owners of the land.
To revive its existence, a new grant from the owners was indispensable, and had not this grant been contained in the agreement, there would have been no pretence for saying-that the *582 power now exists. Strike from the agreement the clauses that relate to the power, and it is wholly gone.
We do not understand that the counsel for the defendants denied the position that the power, as now claimed, was granted by the agreement of 1846. It is, however, a necessary consequence of the truth of this position that the power was granted by the owners of the lands, to be exercised for their sole benefit. It is, therefore, not a trust power, but in the language of the statute, “ a simple power of attorney, to convey lands in the name and for the benefit of the owner,” that is, a power to which it is expressly declared that the provisions of the statute, shall not extend. It is true, that the form of the instrument by which the trustees are converted into the attorneys in fact of the parties interested, is unusual, but if the intent is apparent, the form is immaterial. We have indeed been told that the agreement only contains a covenant that the trustees shall sell, but we are clearly of opinion that the clause in question is more than a covenant. It was meant to be, and therefore is, a grant of necessary authority, just as effectual as if the parties had executed and delivered to the trustees a power of attorney to sell and convey in the ordinary form.
The next inquiry is whether the power of the trustees to sell as attorneys, has been or can be revoked.
As a general rule, a mere power of attorney may be revoked by the grantor, at any time previous to its actual execution; but when several tenants in common, by their joint act, constitute an attorney to sell the lands in which they are interested for their common benefit, and to distribute the proceeds among them in proportion to their respective interests ; it is not to be doubted, that they may, by an agreement founded on a sufficient consideration, render the power of the attorney irrevocable, otherwise than by the joint consent and act of all who unite in its creation ; and if such is the character of the power in the present case, and such the effect of the agreement of the parties, the bar which it creates to a partition is just as insuperable, as if it had been raised by a power in trust. It is of no consequence how the power is named or classified; if it exists, may now be exercised, and without the consent of all the defendants cannot be revoked, it pre *583 eludes us from granting to the complainant the relief that he solicits.
What then upon this question is the true construction of the agreement? Its terms are such as to leave no room for a reasonable doubt as to the actual intentions of the parties. They certainly intended that the power given to the trustees should not be revoked, unless with the consent of all who were interested in its execution. They declare that if any one of the parties shall not consent to a different arrangement, a sale shall be made by the trustees under the trust deed, upon the requisition of the other parties subscribing to the agreement, for the payment of the bonds and notes then due. It must be observed that the trustees are to sell under the original trust deed, which can only mean according to the terms of that deed, and in the mode and upon the conditions that it prescribes. No other interpretation can be given to the words “ under the trust deed,” and we certainly have no right to reject them as unmeaning or superfluous.
It is unnecessary to recite at large, the terms and conditions of the trust deed. It is sufficient to say, that they rendered it the duty of the trustees to sell, if necessary, all the property that the trust embraced, upon the requisition in writing, either of the defendant Vermilya, or of the complainant Selden, after any one of the bonds or notes held by them respectively, should become due, and for a specified period remain unpaid. The right to require a sale thus given to Vermilya and Selden was, in its nature, individual and separate, and as it was to be exercised by each in his own discretion, neither could prevent or forbid its exercise by the other. Hence, the similar authority given to the subscribers to the agreement, the holders of the bonds and notes then due, must receive the same interpretation; it vests in each of them the same right to demand and enforce a sale, that was originally vested in Vermilya and Selden, and it equally excludes the supposition that the exercise of this right could be prevented or forbidden by the separate action of any one of them. It therefore excludes the supposition that the power to sell then given to the trustees, could be otherwise revoked than by the joint act of all by whom it was jointly ere *584 ated, since the supposition of a right in each to require, and in e ach to prohibit a sale, would be a manifest absurdity. The co-existence of rights thus conflicting, is a logical contradiction, and a legal impossibility.
Still, however, the question remains to be considered, whether the agreement,of the parties to render the power to sell irrevocable in the sense that has been explained, was founded on a suiflcient consideration 1 We might, perhaps, content ourselves with saying, that as the agreement is under seal, the law- implies a valid consideration, or, at least, casts upon the complainant the burden of disproving its existence. But it is needless to resort to this argument, since we are satisfied that a sufficient consideration appears upon the face of the agreement.
We do not, however, rely upon- the consideration that was alone stated by the defendants counsel, and■ upon which-Mr. Justice Edmonds, in dissolving the injunction, seems to have rested his decision, viz.: that some of the defendants who were assignees of Vermiiya, by requiring the trustees to sell, had entitled themselves to the satisfaction of their claims, prior to any payment to be made to the complainant, and that by the terms of the agreement, this preference in the order of payment, was wholly relinquished. We are satisfied, that the preference as claimed never existed, and that the supposition of its existence, is founded upon an erroneous interpretation" of - the trust deed. The trustees when required to sell, were not bound-to apply the proceeds of the sale to the satisfaction only of the claims of the creditors upon whose requisition they acted, but to the payment of all the bonds and notes then remaining due and unpaid, and of the unpaid interest upon such as had not then attained their maturity. Hence, had the sale contemplated and .required in 1846, been actually made, the complainant would have had an immediate right to more than a moiety of the proceeds, and his rights in - this respect were in no degree altered or enlarged by the agreement that prevented the sale. It is true, that the holders of all the bonds and notes that at the date of the agreement were due and unpaid, were entitled to a preference in the order of payment over the bonds which were to fall due -in 1847 and . 1848. They had a prior lien upon the whole of the trust *585 property for the satisfaction of their debts ; but so far from relinquishing this lien, they were careful to retain it, an important fact that hitherto has by no means received the attention that it will be found to deserve. A sufficient consideration, however, rejecting that which has been stated, for all the stipulations contained in the agreement of 1846, is to be found in the discharge of the debtor, B. W, Rogers, from all personal liability. The agreement must be construed as entire. We are bound to consider all its provisions and stipulations as connected with and dependent upon each other, and have therefore no right to say that any one of the defendants would have consented to a sacrifice of his own rights by a release of the debtor, had not the power of the trustees to sell the property under the trust deed, been preserved, and continued in force. Such would be our construction of the agreement looking only to its terms, but it is proper to add, that several of the defendants have expressly sworn, that had not the clauses in relation to a sale by the trustees been inserted in the agreement, their consent to its execution would never have been given.
We have said all that we deem it necessary to say upon this branch of the case, and our conclusions are, that admitting it to be true that the trustees, Noyes and Ogden, have neither a trust estate nor a trust power, yet a valid power to sell the property now sought to be divided, was vested in them by the agreement in October, 1846, and by the terms of that agreement was made irrevocable, unless with the consent of all the parties interested in its execution ; and, consequently, that a court of equity, in the rightful exercise of its jurisdiction, cannot prevent the exercise of this power, and, in effect, annul the agreement by which it was created. It cannot therefore decree a partition.
The reasons that have been given are sufficient to explain, and as we conceive, justify our decision; but there is another aspect in which the case may justly be viewed, and other grounds upon which our decision may, with entire propriety, be rested, and in justice to the parties and ourselves, ought to be rested. Hitherto it has been assumed, that the parties before us, excluding the trustees, have become the owners, legal or *586 equitable, of the trust property, and that the only obstacle to a partition, is that which their own agreement has created ; but we are satisfied that this assumption is wholly gratuitous, and in reality is inconsistent with a just interpretation of the acts and intention of the parties. Our conviction is, that the whole title, legal and equitable, of Rogers, is now vested in the trustees as such, and that their estate, looking to the purposes for which it was created, and still exists, is valid as an express trust, under the provisions of the revised statutes. There are numerous topics that might probably be urged in support and illustration of this construction of the agreement of October, 1846, and of the conveyances and releases, which, in pursuance of that agreement, were subsequently executed ; but omitting the larger portion of these topics, we shall attempt to exhibit the argument in a condensed form, believing that the observations that we shall make, will be amply sufficient to vindicate the conclusion at which we have arrived.
The positions upon which the complainant’s counsel relied, and which they developed and enforced with their usual ability and learning, will be stated nearly in the language, and certainly with no variation from the meaning, of their points. They are, that by the release of Rogers from his personal liability, the sui render of the bonds and notes, for the payment of which the original trust was created, and the acceptance by the creditors, the cestui que trusts, of the trust fund in satisfaction of their debts, the purposes for which the original trust had been created wholly ceased, and with it the estate of the trustees, Noyes and Ogden, also ceased, and that the parties who thus accepted the estate in satisfaction of their demands, became therefore legally, as well as equitably, entitled to the lands and property in the respective proportions of their several debts, that were thus extinguished.
In considering these positions, we begin with observing, that in o;der to sustain them, the learned counsel were compelled to assume, that the sale contemplated by the October agreement, was to be made for the common and equal benefit, in proportion to their respective demands, of the holders of all the bonds and notes, for the security and payment of which the original *587 trust was created, so that the holders of the bonds that had not then reached their maturity, but were to become due in 1847 and 1848, in the event of a sale, were to be entitled to share in the distribution of the proceeds, in proportion to their demands, whatever the amount of the proceeds might be. Should the proceeds exceed the amount of all the debts, they were to share proportionably in the gain, and in case of a deficiency, were to bear only a proportion of the loss. It was not denied by the defendants counsel, that this was the true construction of the agreement, and such was our own understanding throughout the argument; but were this the case, the positions of the complainant’s counsel, that by force of the agreement and of the instruments by which it was executed, the estate of the trustees wholly ceased, and those entitled to share in the proceeds of a sale, became in judgment of law the owners of the land, would probably have admitted of no dispute, and certainly of no reply. A trust to sell lands for the purpose of distributing the whole proceeds, whether in equal or unequal proportions, among different persons, it is evident, cannot be referred to any of the classes of the express trusts, that are alone authorized by the revised statutes. Whatever may have been the original character of those for whose benefit such a trust is created, it is certainly not a trust for the benefit of creditors, since such a trust necessarily implies a residuary or reversionary interest in the person by whom it is created. When the debts are satisfied, it is to him or his representatives, that unsold lands must revert; to him or his representatives, that surplus moneys arising from a sale must belong. Nor when there is no distinction in the order of payment, can the trust be sustained, as a trust for the purpose of satisfying a charge, for every charge is a definite sum, and equally with a debt implies a limited interest in the person in whose favor it is created. When a trust is created for a purpose not authorized by the revised statutes, no estate legal or equitable, vests in the trustees, and consequently the title that is intended to be conveyed, must either remain in the person creating the trust, or must pass to the cestui que trusts, who are its objects. In the present case, however, it has been decided that the title, legal and equitable, of Rogers, the origi *588 nal grantor, is wholly extinguished, and it is a necessary consequence of" this decision, that if his title is not now vested in the trustees, it must have passed to those for whose benefit the trust was created. Upon the supposition, therefore, that the estate of the trustees cannot now be supported as an express trust, the position of the complainant’s counsel, that the parties before us, with the exception of the trustees, are legal or equitable tenants in common, would be fully established.
We have said that the learned counsel for the complainant were forced to assume, that the construction of the agreement upon which they insisted, is that which its terms manifestly imply. Our meaning is, that had the counsel admitted that in making an application of the moneys to arise from a sale, the rights of the bond holders under the agreement were to be substantially the same as under the trust deed, their argument would have failed in its very foundation, since it could no longer, have been said that the purposes for which the original trust was created had ceased to exist; or if, upon technical grounds, this was still asserted, it could not have been denied that the trust estate was revived, and continued in force for purposes just as lawful as those for which it was originally created. If the true interpretation of the agreement is, that in the event of a sale, any portion of the debts, for example, the bonds and potes actually due at the date of the agreement, will be entitled to a prior satisfaction, the debts thus preferred are a lien or incumbrance upon the whole trust property, and consequently, if the whole shall be sold, the whole proceeds, if necessary, must be applied to their satisfaction. Hence, the holders of the postponed debts, (and it must be remembered that owing to the assignments made by Yermilya, it is by different persons that the sums originally due to him, are now claimed,) have only an eventual and residuary interest in the lands, precisely analogous to that of Rogers himself, under the original trust; and upon this supposition, it is certain that there are no parties before the court, between whom, as tenants in common, having an immediate title to the possession of the lands, a partition can be made. It may be true that the holders of the preferred debts, by releasing Rogers from his personal liability, have ceased to be his *589 creditors, and that the sums which they are to receive can no longer, with strict propriety, be denominated debts, but if they have ceased to be debts, we are unable to perceive or imagine upon what' grounds it can be denied that they are subsisting charges upon the lands, or that the power to the trustees to sell the lands, is valid as an express trust under the same section of the revised statutes, by which the original trust is deemed to have been authorized. If no longer a trust for the benefit of creditors, it is “ a trust to sell lands, for the purpose of satisfying a charge thereon.” (1 R. S. 728, § 65, subd. 2.) We see no necessity, however, for adopting the narrow and technical interpretation that would wholly extinguish the original trust. We believe that the effect of the agreement of the parties, and their actual intention, was to continue in force the original trust unchanged in substance and meaning, although somewhat modified in its form, and limited in its application. What substantially was the original trust ? It was to sell the lands for the purpose of satisfying certain sums of money upon the requisition of the persons who might be entitled to demand the payment. What is the trust, as we now suppose it to exist ? So far as the preferred debts are concerned, it is to sell the same lands for the purpose of paying the same sums, to the same persons, upon the same requisition. Nor are we certain that even a nominal change has been made in the trust. We are not certain that the persons for whose benefit the sale is to be made, may not justly be denominated creditors, although they have released the debtor from his personal liability ; nor that the sums which they are entitled to receive may not properly retain the name of debts, although they are limited to be paid out of a particular fund. But we refuse to consider a question which is purely verbal, and has no bearing whatever upon the merits of the controversy. It is sufficient to say, that if by force of the agreement the trust is extinguished for its original purpose, it is by force of the same agreement, uno flatu, revived for another just as legitimate.
We come then to the decisive question. What is the true construction of the October agreement? Is a sale under its provisions to be made for the common and equal benefit, in pro *590 portion to their demands, of all the creditors ? Or is a preference given to particular debts, and the power to sell, in fact, limited to their payment 7 The latter in our opinion is the true and necessary construction.
In considering this question, there are two clauses in the agreement to which our particular attention must be directed, and these, omitting a provision which relates to a different subject, will be literally recited. By the first, the parties agree, “ That arrangement be immediately made for the disposition of the whole trust property. That the same shall be offered for sale by the trustees, upon a reasonable advertisement of the time and place, under such conditions as will conduce to bring about a sale to the greatest advantage of the parties interested.” Had there been no other provision in the agreement in relation to a sale, it would have been a fair and reasonable inference that the proceeds were to be distributed ratably among all the creditors in proportion to their demands, but the arrangement here mentioned, as the terms and conditions of a sale remained to be settled, it is evident, depended for its execution upon the consent of all the parties interested, and as it was foreseen that the consent of all might not be given, the next clause (which for a different purpose has already been recited) provides for the contingency. It is in these words, “ and in the event of any one of the parties not consenting hereto, then a sale shall be made under the trust deed, upon the requisition of the other parties subscribers hereto, for payment of the bonds and notes held by them which are now due.” Thus in the plainest terms making the amount of the bonds and notes then due, a gross charge upon the whole trust property, and empowering the trustees to sell the whole, for the purpose of satisfying the charge; and as the amicable arrangement first contemplated has wholly failed, it is this power, and this only, that the trustees can now be said to possess or be allowed to exercise. It is not however a separate and independent power. It is annexed to the estate of the trustees, defines its quality and determines its validity. The power expresses the trust upon which they hold the lands, and the trust thus expressed confirms their title.
*591 Nor can it be doubted that the actual intentions of the parties entirely corresponded with the construction that we have given to their acts. They never meant to extinguish the trust. They meant that the trustees should continue to hold the estate substantially for the purposes for which the original trust was created. This is implied in the language of the agreement, that the sale should be made under the trust deed. It is evinced •by the fact that the conveyances in execution of the agreement were made directly to the trustees, which, unless it was intended to clothe the trustees with the title, neither the parties nor their legal advisers, could ever have supposed was the course necessary or proper to be followed. And it is rendered still more evident by the terms of the conveyance from The Farmers Loan and Trust Company, in February, 1847, in which the habendum clause is to the trustees as joint tenants, for the purposes expressed in the original deed of trust.
Here we close the discussion, and the result is that quacunque via data, from whatever direction we approach the case, the obstacles to a partition are found to be insuperable.
As every pretence of fraud or mistake is effectually refuted, we cannot annul or change the solemn agreement of the parties. To deprive the preferred bond-holders of their prior lien, their right to have the whole property sold, if necessary, for their exclusive benefit, would be an act of positive and manifest injustice ; and upon the application of a single cestui que trust, to destroy the trust estate that all have united to create, an arbitrary exercise of power; and these are the consequences which a decree, such as we have been required to make, of necessity involves.
A partition however is not the only relief that is sought. It has been insisted that if a partition be denied, the bill ought to be retained for the purpose of settling the accounts of the parties, and by the present determination of their rights, preventing a multitude of future suits • and we have been referred to numerous authorities to show that for these purposes the equitable powers of the court may be justly invoked. The citation of these authorities was needless, for although it has been doubted *592 by eminent jurists, whether the jurisdiction in question ought ever to have been assumed, the jurisdiction itself, in its practical exercise, has been long and firmly established. The difficulty; is that there are no facts in the present case to require or warrant its exercise. There are in reality no accounts to be settled, and should our present determination stand, no future litigation that need be apprehended.
The sum to be paid to each of the parties interested, who may be entitled to a payment in the event of a sale, will be ascertained by a simple process in arithmetic, and for the purpose of enabling the trustees to make this necessary and easy computation, the original bonds and notes, the payment specified in the answers being indorsed thereon, have been placed in their hands, and are to be retained by them until the termination of the trust. It is true the bill alleges that the note now claimed by the defendant Lent, has been fully paid; but the explanation in the answers of the defendants, Vermilya and Lent, is full and satisfactory, and is uncontradicted by proof. The payments that, looking to the form of the receipts set forth in the bill, would seem to have been made by Rogers, were in reality advances made by Lent, under an agreement that he should retain the note for his security. What then are the questions that are to give rise to a multiplicity of suits 1 As between the parties interested, there are none, and as to the trustees, their conduct is not impeached, and their capacity and integrity are unquestioned. The course they are to follow in the execution of their trust, is exceedingly plain. They are to follow the rules that the original trust deed as modified by the agreement clearly prescribes, and they have not required, nor can they need any directions from the court in the performance of duties, which, we doubt not, they perfectly understand and will faithfully discharge.
The decree that must follow the observations we have made, we are fully aware, will greatly disappoint the expectations of the complainant and of his counsel; and we have already stated that our first impressions, had we followed them, would have led us to a different result. During the argument, we sup-, posed, as all the counsel evidently supposed, that the proceeds *593 of ¡a sale, if made, were to be ratably distributed among all the ■creditors. Upon this supposition, there was an apparent equity in the complainant’s case, that strongly inclined us to grant the relief that he seeks. We were unable to perceive that any one of the defendants could be injured by a partition, and we clearly saw that by an immediate sale, the interests of the complainant might be greatly prejudiced ; but when our examination of the papers, discovered to us the error into which we had fallen, the apparent equity that had misled us, wholly vanished.
The maxim of the Roman law, nemo debet in com/munione invitas teneri, it is unjust that a part owner should be held to continue such in contradiction to his own wishes, embodies the principle upon which the jurisdiction of equity in cases of partition may justly be said to rest, and to the truth of the maxim we entirely assent. But the complainant is not a part owner, in the sense of the maxim. He is not a tenant in common, having an immediate right of possession. He can have no title to a partition, until the existing charges upon the lands shall have been satisfied, and by their satisfaction, the estate of the trustees shall have been divested; and were there no existing charges, no estate in the trustees, he has precluded himself from asking a partition, by consenting to an agreement, that the lands shall be sold, and that, by no separate act of his, shall the sale be prevented.
The motion to refer, must therefore be denied, and the bill be dismissed with costs.